

United States Courts
Southern District of Texas
FILED

NOV 2 1 2011

David J. Bradley, Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN F. MONAHAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. _____ |
| | § | |
| KBR, INC.; KELLOGG BROWN & | § | |
| ROOT SERVICES, INC.; and KBR | § | |
| TECHNICAL SERVICES, INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DEFENDANTS' NOTICE OF REMOVAL

Defendants KBR, Inc., Kellogg Brown & Root Services, Inc. ("KBRSI"), and KBR

Technical Services, Inc. ("KBRTS") (collectively "Defendants") hereby remove this case from

the 151st Judicial District Court of Harris County, Texas, to the United States District Court for

the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. §§ 1331, 1441 (federal

question removal), and 1442 (federal officer removal).[1]

## I.   PURSUANT TO 28 U.S.C. § 1446, REMOVAL IS TIMELY

On October 27, 2011, a civil action was commenced against Defendants with the filing of

Plaintiff's Original Petition captioned *John F. Monahan v. KBR, Inc., et al.*, No. 2011-65568

(Tex. Civil District Ct., Harris Cty., 151st Jud. Dist.) ("Petition").  That same day, Plaintiff filed

his First Amended Petition, which did not differ in any material respect from the Original

Petition.  On November 4, 2011, Plaintiff filed his Second Amended Petition, which did not

---

[1] Defendants expressly reserve all defenses to Plaintiff's claims, including all challenges to
subject matter jurisdiction or venue/forum non conveniens.  Defendants expressly reserve their
arguments that several of the named Defendants are inappropriately named, as they are not
parties to the government contract at issue here.  In responding to the allegations in the Petition,
Defendants do not concede in any way their completeness or accuracy or that Plaintiff has
adequately pled a legally cognizable claim.

differ in any material respect from the Original Petition.  The Original Petition was served on each of the three named Defendants on November 7, 2011.  The First and Second Amended Petitions have not been served on Defendants.  A true and correct copy of Plaintiff's Original Petition, First Amended Petition, Second Amended Petition, all process, pleadings, and orders in the state court action are attached hereto as Exhibit 1, as required by 28 U.S.C. § 1446(a).[2]

Defendants are filing this Notice of Removal within thirty (30) days of service of Plaintiff's Original Petition, making removal timely under 28 U.S.C. § 1446(b).

## II.      NATURE OF PLAINTIFF'S CLAIMS

In the Original Petition, Plaintiff alleges that Defendants, pursuant to a contract with the United States, disposed of waste at military bases in Afghanistan by burning it in open air burn pits without any safety precautions, thereby knowingly exposing Plaintiff to highly toxic smoke, ash, and fumes that ultimately caused him to suffer a variety of respiratory injuries, emotional injuries, an increased risk of future diseases, and potential impacts to his future offspring.[3]  (Pet. ¶¶ 4.1 - 4.21.)  Plaintiff asserts six causes of action in the Original Petition:  negligence; gross negligence; negligent infliction of emotional distress; intentional infliction of emotional distress; nuisance; and battery.[4]  (Id. ¶¶ 5.1 - 10.4.)  Plaintiff seeks an award of actual damages, punitive and exemplary damages, pre- and post-judgment interest, and costs against Defendants for

---

[2] Pursuant to Local Rule 81, a copy of the following are attached to this Notice of Removal:  all executed process, pleadings, and orders signed by the state judge (Exhibit 1), the state court docket sheet (Exhibit 2), an index of matters being filed (Exhibit 3), and a list of all counsel of record (Exhibit 4).

[3] Defendants assert that each and all of Plaintiff's allegations of misconduct are without merit.

[4] Defendants expressly reserve their right to challenge the asserted causes of action, many of which fail to state a legally cognizable claim.

alleged past and future physical injuries, mental anguish, medical costs, economic losses, and future ongoing medical monitoring expenses.  (*Id.* ¶¶ 11.1 - 11.9, Prayer.)

## III.   PURSUANT TO 28 U.S.C. § 1442, REMOVAL IS PROPER ON THE GROUNDS THAT THE ACTION IS AGAINST AN ENTITY ACTING UNDER THE DIRECTION OF A FEDERAL OFFICER

This case can be removed pursuant to 28 U.S.C. § 1442 because it involves an action against a person acting under an officer of the United States.  28 U.S.C. § 1442(a)(1); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 396-97 (5th Cir. 1998); *see Mesa v. California*, 489 U.S. 121, 124-25 (1989); *Bennett v. MIS Corp.,* 607 F.3d 1076, 1084-87 (6th Cir. 2010); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996).

To establish removal jurisdiction under section 1442(a)(1), a defendant must:  (1) demonstrate that it is a "person" within the meaning of the statute; (2) establish that it acted pursuant to a federal officer's directions and that a causal nexus exists between the defendant's actions under color of federal office and the plaintiff's alleged injury; and (3) raise a colorable federal defense.  *Winters*, 149 F.3d at 398, 400; *see Mesa*, 489 U.S. at 129; *Bennett*, 607 F.3d at 1085; *MTBE*, 488 F.3d at 124; *Jamison v. Wiley*, 14 F.3d 222, 237-39 (4th Cir. 1994).  As demonstrated below, each of these elements is present in this case.

### A.   Defendants Are Legal Persons Acting Under Federal Authority

Defendant corporations are legal "persons" for the purposes of removal under 28 U.S.C. § 1442.  *Winters*, 149 F.3d at 398; *MTBE,* 488 F.3d at 124 ("it is clear that corporations are 'persons' within the meaning of the [federal officer removal] statute").

**B.     A "Causal Nexus" Exists Between Defendants' Activities Under Federal Authority and Plaintiff's Claims**

The second element of the federal officer removal test is satisfied by a showing that: (1) Defendants acted pursuant to a federal officer's directions; and (2) a causal nexus exists between Defendants' actions under asserted official authority and Plaintiff's claims. *Winters*, 149 F.3d at 398-99; *MTBE*, 488 F.3d at 124; *Magnin*, 91 F.3d at 1427-28. To meet this standard, Defendants "must only establish that the act that is the subject of Plaintiff['s] attack . . . occurred while Defendants were performing their official duties." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137-38 (2d Cir. 2008) (emphasis omitted).

First, Defendants "acted under" a federal officer through their contracts to provide waste disposal services to the military in Afghanistan. In *Isaacson*, the Second Circuit considered whether contractors producing the defoliant Agent Orange for the Department of Defense were "acting under" federal officers. *Id.* at 136-37. Finding that this requirement is "to be interpreted broadly," the *Isaacson* court held that private contractors that "assisted and helped carry out the duties or tasks of [federal] officers" in war have a "special relationship" with the federal government that supports the "acting under" requirement. *Id.* (internal quotations and editing marks omitted).

In this case, the waste disposal services that form the gravamen of Plaintiff's Original Petition were provided by Defendants in furtherance of military operations in Afghanistan pursuant to Defendants' contracts with the United States military. (Pet. ¶¶ 4.1 - 4.2, 4.5.) At all relevant times, Defendants' waste disposal services in Afghanistan were overseen, supervised, and/or authorized by members of the military and were subject to numerous detailed and comprehensive federal military procedures and protocols. *See Bennett*, 607 F.3d at 1087 (concluding that the defendant corporation acted under federal authority where it acted pursuant

to a government contract and "[f]ederal officers closely monitored [the corporation's] work"). As such, Defendants were acting under the detailed authority and control of federal officers – i.e., the Secretaries of the Armed Services or their delegees, including the cognizant Contracting Officers. *See Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992) ("[t]his control requirement can be satisfied by strong government intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction'") (quoting *Gulati v. Zuckerman,* 723 F. Supp. 353 (E.D. Pa. 1989)).

Second, a causal nexus exists between Defendants' actions taken under federal authority and Plaintiff's alleged injuries. In his Original Petition, Plaintiff claims he was injured as a result of the waste disposal services that Defendants provided under the authority of federal officers pursuant to contracts with the military (Pet. ¶¶ 4.1 - 4.5.) – i.e., *Plaintiff alleges he was injured due to emissions from open air waste disposal burn pits that the military asked Defendants to operate.* As such, all of Plaintiff's claims are grounded in Defendants' contractual relationship with the United States Army under which Defendants performed the waste disposal services at issue here.

Because these allegations are all based on Defendants' "special relationship" with the government, and all of Plaintiff's claims are based on Defendants' actions in fulfilling government contractual obligations, Defendants are being sued because of their actions on behalf of the government. *Compare Isaacson*, 517 F.3d at 137 (causation requirement satisfied if plaintiffs' complaints arose through performance of "official duties" under federal contracts) *with* Pet. ¶¶ 4.2 - 4.3 (alleging that "[t]his lawsuit arises from one of the tasks KBR was charged with safely handling – waste disposal" and that Defendants breached their contract with the military by failing to take ordinary and necessary safety precautions to protect those working in

and around open air burn pits) *and* Pet. ¶ 4.5 ("Instead of doing what KBR promised and was paid to do for defense operations in Afghanistan, KBR's managers . . . disregarded and downplayed the extreme danger of exposing Plaintiff to a panoply of highly toxic and carcinogenic emissions from burn pits, knowingly subjecting him to these extraordinary dangers."). As such, a causal nexus exists between Defendants' actions taken under federal authority and Plaintiff's alleged injuries. *See Bennett*, 607 F.3d at 1088 ("[the defendant corporation's] mold remediation work, which was performed at the direction of FAA officers under contract, was also the alleged cause of plaintiffs' personal injuries. This establishes the nexus required by § 1442(a)(1).").

C.    **Defendants Assert Colorable Federal Defenses**

Defendants also satisfy the third element of the federal officer removal test by asserting several colorable federal defenses, including the political question doctrine, the "combatant activities" exception to the Federal Tort Claims Act ("FTCA"), official and derivative sovereign immunity, the government contractor defense, the state secrets doctrine, and the Defense Production Act of 1950 (the "DPA").

At this stage in the proceedings, Defendants need not show that such defenses will prevail, but only that the defenses are "colorable." *Winters*, 149 F.3d at 400; *Magnin*, 91 F.3d at 1427 (the stated federal defense "need only be plausible; its ultimate validity is not to be determined at the time of removal"); *Bennett*, 607 F.3d at 1089 (same); *Fung,* 816 F. Supp. at 573; *Isaacson*, 517 F.3d at 139 (asserted defense need not be clearly sustainable upon removal, as the purpose of federal officer removal "is to secure that the validity of the defense will be tried in federal court.").

**Political Question Doctrine/Separation of Powers**. Because Plaintiff's claims concern U.S. military conduct as well as U.S. foreign relations issues, the political question and

separation of powers doctrines are implicated.  *See Baker v. Carr*, 369 U.S. 186, 217 (1962) (cases that cannot be decided without courts making policy determinations of a kind clearly for nonjudicial discretion are nonjusticiable); *Goldwater v. Carter*, 444 U.S. 996, 1002 (1979) (political aspects of foreign affairs not subject to judicial review) (plurality opinion); *see also, Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986) (the political question doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch").

In a number of similar cases arising from private contractors' work for the U.S. military, federal courts have dismissed claims based on the political question doctrine.  *See, e.g., Taylor v. Kellogg Brown & Root Servs., Inc.*, 658 F.3d 402, 408-12 (4th Cir. 2011) (dismissing on political question grounds a personal injury action brought against KBR by Navy corpsman who received an electric shock while attempting to install a backup power source because adjudication of plaintiff's claim would require a judicial assessment of military decisions made in a combat theatre.); *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1296 (11th Cir. 2009) (affirming dismissal of tort action brought by soldier injured during a military convoy operation in Iraq against military contractor who provided convoy services because "[t]o do so inevitably would require us to address matters that have been definitely entrusted to other branches of the government, and to adjudicate questions that defy resolution by any judicially manageable standards."), *cert. denied*, 130 S. Ct. 3499 (2010); *Smith v. Halliburton Co.*, No. H-06-0462, 2006 WL 2521326, at *6 (S.D. Tex. Aug. 30, 2006) (Lake, J.) (dismissing wrongful death action arising from incident at a contractor-operated mess tent at a base in Iraq, as "[j]udicial review of such decisions would intrude onto critical areas reserved to the Legislative

and Executive Branches of government"); *Whitaker v. Kellogg Brown & Root, Inc.*, 444 F. Supp. 2d 1277 (M.D. Ga. 2006) (dismissing on political question grounds tort action against military contractor brought by parents of soldier who was killed while escorting a military supply convoy operated by contractor); *Nejad v. United States*, 724 F. Supp. 753 (C.D. Cal. 1989) (dismissing wrongful death action brought against military contractors by families of civilians killed when an Iranian aircraft was accidentally shot down); *Bentzlin v. Hughes Aircraft Co.*, 833 F. Supp. 1486 (C.D. Cal. 1993) (dismissing wrongful death action brought by families of military personnel killed in "friendly fire" accident).  As the *Whitaker* court flatly stated, an injury "at the hands of a contractor which is performing military functions subject to the military's orders and regulations" raises political questions.  444 F. Supp. 2d at 1281.  These cases illustrate that the political question doctrine looms large here and is a colorable federal defense to Plaintiff's claims.

**Combatant Activities Exception to the Federal Tort Claims Act**.  An additional colorable federal defense is the "combatant activities" exception to the FTCA which retains sovereign immunity for any claim against the United States "arising out of the combatant activities of the military or naval forces . . . during time of war."  28 U.S.C. § 2680(j); *see also* 28 U.S.C. §§ 2671-2680; 28 U.S.C. § 1346.  The principles underlying the exception have been extended to military contractors.  *See Al Shimari v. CACI Int'l, Inc.*, 658 F.3d 413, 417-20 (4th Cir. 2011) (holding that the Combatant Activities Exception demonstrated Congress's intent to eliminate tort from the battlefield and thus, state law claims brought by Iraqi citizens who alleged that contractor employees tortured them while they were detained at Abu Ghraib prison in Iraq were preempted because such claims significantly conflicted with the important and uniquely federal interests protected by the Combatant Activities Exception), *reh'g en banc granted*, No.

09-1335 (4th Cir. Nov. 8, 2011); *Saleh v. Titan Corp.,* 580 F.3d 1 (D.C. Cir. 2009) (applying

Combatant Activities Exception to dismiss state tort law claims against private contractors that

were providing interrogation and translation services to the U.S. military at the Abu Ghraib

prison in Iraq), *cert. denied*, No. 09-1313, 2011 WL 2518834 (U.S. June 27, 2011); *Koohi v.

United States*, 976 F.2d 1328, 1336 (9th Cir. 1992) (applying Combatant Activities Exception to

bar state tort law claims against weapons manufacturers for injuries sustained after the Navy

mistook a civilian aircraft for a military flight and shot it down); *Bentzlin,* 833 F. Supp. at 1494

(applying Combatant Activities Exception to dismiss claims brought on behalf of a group of U.S.

Marines that were killed when a missile intended for an Iraqi target hit the Marines' truck

instead).

In *Saleh v. Titan Corp.,* 580 F.3d 1 (D.C. Cir. 2009), the D.C. Circuit applied the

Combatant Activities Exception to dismiss all state tort law claims against private contractors

that were providing interrogation and translation services to the U.S. military at the Abu Ghraib

prison in Iraq.  Recognizing the paramount federal interests advanced and protected by the

FTCA's Combatant Activities Exception, the D.C. Circuit established the following bright-line

test:

> During wartime, where a private service contractor is integrated
> into combatant activities over which the military retains command
> authority, a tort claim arising out of the contractor's engagement in
> such activities shall be preempted.

*Id*. at 9; *accord Al Shimari*, 658 F.3d at 420 ("[W]e hold . . . that conduct carried out during war

and the effects of that conduct are, for the most part, not properly the subject of judicial

evaluation.").  The D.C. Circuit held that the policy behind the combatant activities exception is

"simply the elimination of tort from the battlefield" and recognized that this policy is "equally

implicated whether the alleged tortfeasor is a soldier or a *contractor engaging in combatant*

*activities at the behest of the military and under the military's control.*"  *Saleh*, 580 F.3d at 7 (emphasis supplied); *accord Al Shimari*, 658 F.3d at 419-20 ("The uniquely federal interest in conducting and controlling the conduct of war . . . is simply incompatible with state tort liability in that context.").

In sum, because Plaintiff's Original Petition seeks to impose state tort liability on Defendants for conduct that occurred during a "time of war," Defendants assert the "combatant activities" exception as a colorable federal defense.

**Official and Derivative Sovereign Immunity**.  Defendants also raise as federal defenses the doctrines of official and derivative sovereign immunity.  Defendants possess "official" immunity for conduct that was within the scope of their authority under the terms of their contractual obligations with the United States.  *See, e.g., Westfall v. Erwin*, 484 U.S. 292 (1988); *Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169 (2d Cir. 2006); *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1447-48 ("[I]f absolute immunity protects a particular governmental function . . . it is a small step to protect that function when delegated to private contractors."); *Servco Solutions v. CACI Int'l, Inc.*, No. 1:07cv908, 2007 WL 3376661, at *3 (E.D. Va. Nov. 9, 2007) ("[T]he same immunity from tort suits afforded to government officials should also be awarded to those who perform delegated actions in the government's stead."); *Marsaw v. Trailblazer Health Enters., LLC*, 192 F. Supp. 2d 737 (S.D. Tex. 2002).

Moreover, Defendants are protected from Plaintiff's claims by "derivative" sovereign immunity.  *See Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 22 (1940) (the action of an authorized government agent is the act of the government); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196 (5th Cir. 2009); *Bynum v. FMC Corp.*, 770 F.2d 556, 564 (5th Cir. 1985); *Peterson v. Weinberger*, 508 F.2d 45, 51-52 (5th Cir. 1975).  The Fifth Circuit confirmed that a private

entity, while performing a "public works" project for the U.S. military, holds derivative sovereign immunity. *Ackerson*, 589 F.3d at 196 (affirming lower court's dismissal of plaintiffs' tort claims against numerous military contractors who allegedly provided negligent dredging services under an Army Corps of Engineers contract that plaintiffs claimed caused environmental damage and amplified the storm surge in the New Orleans region during Hurricane Katrina).

Because Plaintiff's Original Petition alleges injuries arising from Defendants' provision of waste disposal services pursuant to a validly conferred federal contract, official and derivative sovereign immunity are colorable federal defenses in this action.

**The Government Contractor Defense**.   The government contractor defense is yet another colorable federal defense implicated by Plaintiff's Original Petition.   Under the government contractor defense, Defendants cannot be liable to a third party in tort if the government approved reasonably precise specifications and procedures, Defendants conformed to those specifications and procedures, and Defendants warned the government of risks of which the government was unaware. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988); *Isaacson*, 517 F.3d at 138; *In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 87-92 (2d Cir. 2008).

The government contractor defense is implicated in this case because (a) Defendants' waste disposal activities at issue were performed pursuant to reasonably precise contracts, protocols, and procedures reviewed and approved by the military; (b) Defendants' activities conformed to these approved contracts, protocols, and procedures; and (c) Defendants warned the government of risks associated with these activities of which the government was unaware. *See Isaacson*, 517 F.3d at 139 (government contractor defense is a colorable federal defense); *In re "Agent Orange" Prod. Liab. Litig.*, 304 F. Supp. 2d 442, 450 (E.D.N.Y. 2004) (same).

Indeed, the government itself had extensive, if not superior, knowledge of the risks associated with Defendants' use of open-air burn pits for waste disposal at military bases in Afghanistan. Accordingly, the government contractor defense is a viable and colorable federal defense to Plaintiff's claims.

**State Secrets Doctrine**.   The state secrets doctrine provides another colorable federal defense.  Under this doctrine, the Executive Branch may invoke an absolute evidentiary privilege encompassing classified information regarding the services at issue if their disclosure would harm national security. *See United States v. Reynolds*, 345 U.S. 1 (1953).  Defendants assert that such issues will be implicated in their defense, thereby making the state secrets doctrine a colorable federal defense.

**Defense Production Act**.  Finally, Plaintiff's claims implicate the Defense Production Act ("DPA"), 50 App. U.S.C. §§ 2061 *et seq.*, which immunizes contractors from damages resulting from performance of mandatory defense contracts, such as the contract at issue in this action. *See Arness v. Boeing N. Am., Inc.,* 997 F. Supp. 1268, 1273 (C.D. Cal. 1998) (DPA is a colorable federal defense for the purposes of removal).  As such, the DPA is another colorable federal defense that Defendants can assert to Plaintiff's claims in this action.

Because Defendants satisfy all three elements of the federal officer removal test, this case is properly removed pursuant to 28 U.S.C. § 1442.

## IV.   PURSUANT TO 28 U.S.C. § 1441, REMOVAL IS PROPER BECAUSE PLAINTIFF'S CLAIMS INEXTRICABLY INVOLVE FEDERAL QUESTIONS.

Removal of this case is also proper pursuant to 28 U.S.C. § 1441, as this case arises under the Constitution, laws, and treaties of the United States and involves uniquely federal interests. Although Plaintiff asserts only state law causes of action, his Original Petition reveals that adjudication of the elements of those causes of action will require this Court to resolve

substantial disputed questions of federal law.  The Supreme Court has recognized that even in cases where the causes of action asserted by a plaintiff are couched exclusively in state law terms, federal question jurisdiction exists if resolution of those state law causes of action depends on resolution of substantial predicate questions of federal law.  *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) ("a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues"); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983).

In this case, the resolution of Plaintiff's state law claims depends on the resolution of substantial predicate questions of federal law.  Because the state law causes of action Plaintiff sets forth in his Original Petition challenge Defendants' burn pit services that were performed at the direction and control of the U.S. military pursuant to a federal contract, Plaintiff's state law claims will require this Court to analyze and interpret a myriad of federal laws, directives, and regulations that govern those services.  For example, adjudication of Plaintiff's claims will require the Court to resolve issues regarding the DPA, which immunizes contractors from damages resulting from performance of mandatory defense contracts.  In addition, Plaintiff alleges that KBR's burn pit services were provided under a federal contract with the military (Pet. ¶¶ 4.1 – 4.2, 4.5, 4.11), numerous provisions of the Federal Acquisition Regulation (FAR) will have to be analyzed and interpreted as part of this case.  Moreover, because Defendants' burn pit services at issue are inextricably intertwined with decisions made by the military on the battlefields of Afghanistan, numerous federal laws governing the Political Question Doctrine, the Combatant Activities Exception to the Federal Tort Claims Act, Official and Derivative

-13-

Sovereign Immunities, and the Government Contractor Defense are all implicated by Plaintiff's claims. Simply put, no amount of artful pleading by Plaintiff can change the fact that the state law causes of action he asserts in his Original Petition will require the Court to analyze and interpret a host of federal statutes, doctrines, immunities, contractual provisions, regulations, and military protocols governing Defendants' burn pit services. As such, removal to this Court is proper because federal question jurisdiction exists under 28 U.S.C. §§ 1331 and 1441 and the Supremacy Clause of the U.S. Const., art. VI, cl. 2.

WHEREFORE, Defendants KBR, Inc., KBRSI, and KBRTS hereby remove this action to the United States District Court for the Southern District of Texas.

Dated: November 21, 2011

Respectfully submitted,

SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP

By: _____
       Margaret T. Brenner
       State Bar No: 02958050
       Federal Bar No: 9044

700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2550
Facsimile: (713) 228-3510
E-mail: pbrenner@sdablaw.com

**ATTORNEY-IN-CHARGE FOR DEFENDANTS KBR, INC., KELLOGG BROWN & ROOT SERVICES, INC., AND KBR TECHNICAL SERVICES, INC.**

-14-

**OF COUNSEL**:

Mark A. Font
State Bar No. 07216000
Federal Bar No. 15667
SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP
700 Milam Street, 10th Floor
Houston, Texas  77002
Telephone: (713) 221-2503
Facsimile:  (713) 228-3510

Raymond B. Biagini
DC Bar No. 320838
Robert A. Matthews
DC Bar No. 431944
Bikram Bandy
DC Bar No. 480967
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, D.C.  20006
Telephone:  (202) 496-7500
Facsimile:  (202) 496-7756

Mark E. Lowes
State Bar No. 12636300
Federal Bar No. 895
Sharon Stagg
State Bar No. 21985950
Federal Bar No. 6384
KBR, INC.
601 Jefferson Ave., 37th Floor
Houston, TX 77002
Telephone: (713) 753-4322
Facsimile: (713) 753-3443

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via hand delivery and electronic mail on this 21st day of November, 2011, on the following counsel of record for Plaintiff:

> Michael Patrick Doyle, Esq. (mdoyle@doyleraizner.com)
> Jeffrey L. Raizner, Esq. (jraizner@doyleraizner.com)
> Patrick M. Dennis, Esq. (pdennis@doyleraizner.com)
> DOYLE RAIZNER LLP
> One Houston Center
> 1221 McKinney, Suite 4100
> Houston, TX 77010

_____

Margaret T. Brenner